Gary Wayne JASTER, Petitioner,

v.

COMET II CONSTRUCTION, INC., Joe
H. Schneider, Laura H. Schneider, and
Austin Design Group, Respondents.

No. 12–0804.

Supreme Court of Texas.

Argued Oct. 9, 2013.

Decided July 3, 2014.

David Kenneth Sergi, David K. Sergi & Associates, P.C., San Marcos, TX, for Other interested party.

Andrew L. Kerr, Cynthia E. Ellis Rosen, John Alex Huddleston, Strasburger & Price LLP, San Antonio, TX, for Petitioner.

Kemp W. Gorthey, Attorney at Law, Austin, TX, for Respondent Austin Design Group.

Henderson L. Buford III, Buford & Associates, Austin, TX, for Respondent Comet II Construction, Inc.

Justice BOYD announced the Court's disposition and delivered a plurality opinion, in which Justice JOHNSON, Justice WILLETT, and Justice DEVINE joined.

Chapter 150 of the Texas Civil Practice and Remedies Code requires "the plaintiff" in "any action or arbitration proceeding for

damages arising out of the provision of professional services by a licensed or registered professional" architect, engineer, land surveyor, or landscape engineer to file a supporting expert affidavit "with the complaint." The issue in this case is whether this requirement applies to a defendant or third-party defendant who files a third-party claim or cross-claim against a licensed or registered professional. Concluding that cross-claimants and third-party plaintiffs are not "the plaintiff" in an "action or arbitration proceeding," we hold that the statute's expert affidavit requirement does not apply to them.

## I.

### Background

Mahmoud Dawoud purchased a home from Comet II Construction, Inc. About ten years later, Dawoud sued Comet [1] for negligence, negligent misrepresentations, fraud, deceptive trade practices, and breach of contract, alleging that Comet defectively designed and constructed the home's foundation. Comet denied any liability and asserted third-party claims against Austin Design Group, from whom Comet had purchased the foundation plans, and against Gary Wayne Jaster, the licensed professional engineer who had prepared the plans. Comet sought contribution and indemnity from the third-party defendants, alleging that they "are or may be liable to [Comet] for all or part of [Mahmoud's] complaint." Austin Design Group filed a counterclaim against Comet and a cross-claim against Jaster, seeking contribution and indemnity and asserting

that, "[t]o the extent there is any defect in the foundation, whether by design or construction, it is the fault of [Jaster or Comet] and not the fault of Austin Design Group."

Jaster filed a motion to dismiss Comet's third-party claim and Austin Design Group's cross-claim, arguing that they were each "the plaintiff" as to those claims, that he was a licensed professional engineer, and that they had failed to file an expert affidavit (which the statute refers to as a "certificate of merit") as chapter 150 requires. In response, Comet filed an amended third-party petition, this time attaching a certificate of merit.[2] Jaster then filed an amended motion to dismiss, arguing that Comet did not comply with the statute because it did not file the certificate of merit with the original third-party petition and thus did not file it "with the complaint."

The trial court denied Jaster's motion to dismiss, and Jaster filed this interlocutory appeal.[3] With one justice dissenting, the court of appeals affirmed, concluding that chapter 150 does not require third-party plaintiffs or cross-claimants to file a certificate of merit. 382 S.W.3d 554. Jaster filed a petition for review, which we granted.

## II.

### "The Plaintiff" in an "Action" Under Section 150.002

■ Jaster contends that section 150.002 of the Texas Civil Practice and Remedies Code requires dismissal of the claims that Comet and Austin Design

---

1. Dawoud also sued Comet's principals, Joe and Laura Schneider. We refer to all three defendants jointly as "Comet."

2. Comet later filed a second amended third-party petition, attaching the same certificate of merit.

3. The statute expressly authorizes an interlocutory appeal from an order granting or denying a motion to dismiss. *See* TEX. CIV. PRAC. & REM.CODE § 150.002(f).

Group asserted against him in this case. The 2005 version of this section, which governs this action, provided:

> In any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party licensed architect, registered professional land surveyor, or licensed professional engineer competent to testify, holding the same professional license as, and practicing in the same area of practice as the defendant, which affidavit shall set forth specifically at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim.

Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 20.01, 2003 Tex. Gen. Laws 847, 896–97, *amended by* Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 4, 2005 Tex. Gen. Laws 348, 348 *and* Act of May 27, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 370 *and* Act of May 27, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Gen. Laws 1991, 1992 (current version codified at Tex. Civ. Prac. & Rem.Code § 150.002).[4] "The plaintiff's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant" and "[t]his dismiss-

al may be with prejudice." *Id.* § 150.002(e).[5]

The parties do not dispute that Jaster is a licensed professional engineer and thus a "licensed or registered professional,"[6] or that the claims that Comet and Austin Design Group assert against him arise out of the provision of professional services. Neither Comet nor Austin Design Group filed a certificate of merit when they originally filed their claims against him. The only issue in this appeal is whether the statute required them to do so.

Jaster argues: (1) for purposes of section 150.002, "there is no meaningful distinction" between an original "plaintiff" and a third-party plaintiff or a cross-claimant because they all assert affirmative claims for relief and are subject to the same pleading requirements; (2) third-party claims and cross-claims are "actions," and thus must comply with the statute's requirements for "any action"; and (3) not applying the requirement to third-party plaintiffs and cross-claimants thwarts "the statute's purpose to protect licensed professionals from unmeritorious or frivolous claims." In response, Comet and Austin Design Group contend: (1) because the statute uses the word "plaintiff" rather than the more inclusive term "claimant," the certificate-of-merit require-

---

**4.** Our references to section 150.002 are to the 2005 version of the statute, which the parties agree governs this case. The Legislature has since amended section 150.002, but the current version still imposes the certificate-of-merit requirement on "the plaintiff" in "any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional," including a licensed professional engineer. *See* Tex. Civ. Prac. & Rem.Code § 150.002(a). Thus, our construction of the 2005 version also applies to the current version of the statute.

**5.** This provision was found in subsection (d) in the 2005 version of the statute and was substantively the same for purposes of this case. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 20.01, 2003 Tex. Gen. Laws 847, 896–97 (amended 2005, 2009) (current version codified at Tex. Civ. Prac. & Rem.Code § 150.002(e)).

**6.** Chapter 150 defines "licensed or registered professional" to include licensed architects, licensed professional engineers, registered professional land surveyors, registered landscape architects, and firms in which such licensed or registered professionals practice. *See* Tex. Civ. Prac. & Rem.Code § 150.001(1–a).

ment applies only to a party that initiates a lawsuit; (2) requiring a defendant who denies the plaintiff's allegations to file a certificate of merit that supports the plaintiff's claims would be "absurd," "unfair," and "unreasonable"; and (3) if applying the requirement only to "the plaintiff" undermines the statute's purpose, the Legislature should address that problem, not the courts.[7] After briefly reviewing the courts of appeals' decisions addressing this issue, we consider the language of the statute and its context, and conclude that they compel us to agree with Comet and Austin Design Group.

## A. Judicial Constructions of Section 150.002

Three Texas courts of appeals have addressed section 150.002's certificate-of-merit requirement in the context of third-party plaintiffs or cross-claimants.[8] First, in *DLB Architects, P.C. v. Weaver*, the Dallas Court of Appeals applied the requirement to a defendant who asserted third-party claims for contribution and indemnity against out-of-state architects. 305 S.W.3d 407, 411 (Tex.App.-Dallas 2010, pet. denied). The third-party plaintiff argued that the requirement applies only to architects licensed in Texas, and the court rejected that argument. *Id.* at 410–11. But neither party argued that the requirement did not apply to third-party plaintiffs, and the court applied the requirement without addressing that issue. *Id.*

Next, the Fort Worth Court of Appeals became the first to expressly address the issue in *CTL/Thompson Texas, LLC v. Morrison Homes*, 337 S.W.3d 437 (Tex. App.-Fort Worth 2011, pet. denied). In that case, a homebuilder sued a land developer and several engineers over a real estate transaction and filed a certificate of merit with the original petition. *Id.* at 439. The land developer brought cross-claims against the engineers, but instead of filing a certificate of merit, he incorporated the homebuilder's certificate of merit into his cross-petition by reference. *Id.* The engineers argued that the statute required the developer to file his own certificate of merit to support the cross-claims. *Id.* at 440. The court of appeals held that the statute does not apply to a defendant who merely files cross-claims against another defendant. *Id.* at 445–46. The court rejected the engineer's reliance on *DLB Architects* on the ground that it involved a defendant who filed third-party claims against a new third-party defendant, rather than cross-claims against a defendant who was already in the case. *Id.* The court reasoned that there is no need to require a cross-claimant to file a certificate of merit because "the plaintiff will have already filed [one]," or "if not, the plaintiff's claims are subject to dismissal." *Id.* at 445. But because the plaintiff will not have already filed a certificate of merit addressing the conduct of a new third-party defendant, the court reasoned that a third-party plaintiff should be required to do so, even if a cross-claimant is not. *Id.* at 445–46.

Finally, in the case before us today, the Austin Court of Appeals held that the statute does not require third-party plaintiffs or cross-claimants to file a certificate of merit. The court identified many respects in which third-party plaintiffs and cross-

---

7. Comet and Austin Design Group argue additional grounds for affirming the appellate court's judgment, but we need not reach them in light of our construction of the statute.

8. We recently addressed section 150.002 in *CTL/Thompson Tex., L.L.C. v. Starwood Homeowners Ass'n,* but that appeal did not involve the issue of whether the certificate-of-merit requirement applies to parties other than a "plaintiff." 390 S.W.3d 299 (Tex.2013).

claimants are both similar to and yet different from original plaintiffs. 382 S.W.3d at 559–60. The majority observed that "the statute does not specifically address defendants filing third-party complaints and cross-claims" and suggested that "there are multiple options of how the certificate-of-merit requirement could be applied to them," depending on whether the claims are original to the defendant or derived from the plaintiff's claims and whether they assert the claims against new parties or parties already in the suit. *Id.* at 560. After considering the potential "unintended consequences of an expansive definition of 'plaintiff,' " *id.* at 561, the majority noted that the statute uses the word "plaintiff" instead of "claimant" and does so without defining it to include third-party plaintiffs and cross-claimants. *Id.* at 561–62. Considering the "difficulties in judicially imposing . . . a broader definition of 'the plaintiff,' " the majority decided to "resist the urge to judicially create a solution to the statute's failure to address third-party complaints and cross-claims," and held that the statute "does not require a certificate of merit from a defendant who files a third-party complaint or cross-claim." *Id.* at 562.

The dissenting justice in the Austin Court of Appeals concluded that requiring plaintiffs who sue certain professionals to file a certificate of merit but not requiring defendants who sue such professionals to do so is "an absurd result." *Id.* at 565 (Henson, J., dissenting). In her view, the majority's construction undermines the statute's purpose "to provide a method by which courts can quickly dismiss meritless claims" and ignores the reality that, from the licensed or registered professional's perspective, "third-party plaintiffs and cross-claimants are certainly 'plaintiffs' with regard to the third-party claims and cross-claims[.]" *Id.* at 564–65.

## B. The Language of the Statute

■ We resolve the issue in this case by looking to the language of the statute, which we construe de novo. *Nathan v. Whittington*, 408 S.W.3d 870, 872 (Tex. 2013). We must enforce the statute "as written" and "refrain from rewriting text that lawmakers chose." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex.2009). We limit our analysis to the words of the statute and apply the plain meaning of those words "unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex.2011). While we must consider the specific statutory language at issue, we must do so while looking to the statute as a whole, rather than as "isolated provisions." *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex.2011). We "endeavor to read the statute contextually, giving effect to every word, clause, and sentence." *In re Office of Att'y Gen.*, 422 S.W.3d 623, 629 (Tex.2013). We thus begin our analysis with the statute's words and then consider the apparent meaning of those words within their context.[9]

### 1. The Words of the Statute

■ Section 150.002 requires "the plaintiff" in "any action or arbitration pro-

---

9. By contrast, the dissent begins with its own conclusion, suggesting that the resolution of this case should "be pretty easy" because, after all, it says (without citation), "a third-party *plaintiff* is, in name itself, a plaintiff, and a suit is an action." *Post* at 576 (Hecht, C.J., dissenting) (emphasis in original). We cannot be quite so cavalier when fulfilling our duty to construe Texas statutes, and we cannot begin our analysis with our own unsupported conclusions on the very issue before us. We begin, instead, with the language of the statute.

ceeding" to file a certificate of merit. Chapter 150 does not define the terms "plaintiff" or "action," so we must give them their common, ordinary meaning unless the statute clearly indicates a different result. *See Molinet,* 356 S.W.3d at 411. That is not to say that we must (or may only) give undefined words their *only* meaning, for words can have more than one meaning. The dissent asserts that, "[w]hen a word is used sometimes to mean one thing and sometimes another, neither is 'plain,' 'common,' or 'ordinary' to the exclusion of the other." *Post* at 578. We disagree. When a statute uses a word that it does not define, our task is to determine and apply the word's common, ordinary meaning. The fact that the word may sometimes be used to convey a different meaning is the very reason why we look for its common, ordinary meaning. To determine its *common, ordinary* meaning, we look to a wide variety of sources, including dictionary definitions, treatises and commentaries, our own prior constructions of the word in other contexts, the use and definitions of the word in other statutes and ordinances, and the use of the words in our rules of evidence and procedure.[10]

We begin by reviewing dictionary definitions of the words "plaintiff" and "action." *See Epps v. Fowler,* 351 S.W.3d 862, 873 (Tex.2011) (Hecht, J., dissenting) ("The place to look for the ordinary meaning of words is ... a dictionary."). Dictionaries consistently define a "plaintiff" as a party or person who brings or files a "civil suit" or "legal action." *See, e.g.,* BLACK'S LAW DICTIONARY 1171 (7th ed.1999) (defining "plaintiff" as "[t]he party who brings a civil suit in a court of law"); Garner, Bryan, A DICTIONARY OF MODERN LEGAL USAGE 665 (2nd ed.1995) (defining "plaintiff" as "the party who brings suit in a court of law"); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 888 (10th ed.1993) (defining "plaintiff" as "a person who brings a legal action"). Thus, both the statute and the dictionary definitions recognize a direct relationship between the words "plaintiff" and "action." Jaster contends that "any action," as used in section 150.002, includes each separate claim or cause of action that any party may assert, including an original plaintiff's claims, third-party claims, and cross-claims. This, however, is not the common, ordinary meaning of "action."

▬▬▬ The common meaning of the term "action" refers to an entire lawsuit or cause or proceeding, not to discrete

---

**10.** Examples of our reliance on these various sources to determine a word's common, ordinary meaning are too numerous to cite, but for examples from opinions we issued just within the past two years, see *Zanchi v. Lane,* 408 S.W.3d 373, 378 (Tex.2013) (relying on dictionary definitions, our prior decisions, the rules of procedure, and statutory definitions for the common meaning of "party"); *Rachal v. Reitz,* 403 S.W.3d 840, 845 (Tex.2013) (relying on dictionary definitions and treatises for the common meaning of "agreement"); *Morton v. Nguyen,* 412 S.W.3d 506, 510–12 (Tex.2013) (relying on our prior decisions, dictionary definitions, and the Restatement for the common meanings of "rescission" and "refund"); *City of Hous. v. Bates,* 406 S.W.3d 539, 545–47 (Tex.2013) (relying on dictionary

definitions and a city ordinance for the common meanings of "leave" and "salary"); *State v. $1,760.00 in U.S. Currency,* 406 S.W.3d 177, 181 (Tex.2013) (per curiam) (relying on dictionary definition of "novelty"); *Prairie View A & M Univ. v. Chatha,* 381 S.W.3d 500, 512 n. 16 (Tex.2012) (relying on dictionary definitions and our prior opinions for the common meaning of "requisite"); *Evanston Ins. Co. v. Legacy of Life, Inc.,* 370 S.W.3d 377, 382–83 (Tex.2012) (relying on our prior opinions, other statutes, and treatises for the common meaning of "property"); *Traxler v. Entergy Gulf States, Inc.,* 376 S.W.3d 742, 747 (Tex.2012) (relying on dictionary definition for common meanings of "distribution" and "transmission").

"claims" or "causes of action" asserted within a suit, cause, or proceeding. BLACK'S LAW DICTIONARY at 28 (defining "action" as "[a] civil or criminal judicial proceeding"). "The term 'action' is generally synonymous with 'suit,' which is a demand of one's rights in court." *Thomas v. Oldham*, 895 S.W.2d 352, 356 (Tex.1995); *see also In re Marriage of Combs*, 958 S.W.2d 848, 850 (Tex.App.-Amarillo 1997, no pet.) (holding that an "action" is "a demand for one's legal right and has been held synonymous with 'suit' "). A suit, in turn, is "any proceeding in a court of justice by which an individual pursues that remedy in a court of justice which the law affords him." *H.H. Watson Co. v. Cobb Grain Co.*, 292 S.W. 174, 176 (Tex.1927) (citing *Weston v. City Council of Charleston*, 27 U.S. 449, 464, 2 Pet. 449, 7 L.Ed. 481 (1829)). Although the word "suit" can be "more general in its comprehension than the word 'action,' " both terms refer to a judicial proceeding in which parties assert claims for relief. *Id.* Thus, under the common definition, "[a]n action is a judicial proceeding, either in law or in equity, to obtain certain relief at the hands of the court." *Elmo v. James*, 282 S.W. 835, 839 (Tex.Civ.App.-Fort Worth 1926, writ dism'd w.o.j.). Historically, "action" referred to a judicial proceeding in a court of law, while "suit" referred to a proceeding in a court of equity. BLACK'S LAW DICTIONARY at 29.

■■■■ A "cause of action," by contrast, "has been defined 'as a fact or facts entitling one to institute and maintain an action, which must be alleged and proved

in order to obtain relief.' " *A.H. Belo Corp. v. Blanton*, 133 Tex. 391, 129 S.W.2d 619, 621 (1939) (quoting 1 TEX. JUR. p. 61 sec. 15). As we recently noted, this is "the generally accepted meaning" of the term "cause of action." *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex.2012) (quoting *In re Jorden*, 249 S.W.3d 416, 421 (Tex.2008)). Thus, a "cause of action" and an "action" are not synonymous; rather, the "cause of action" is the right to relief that entitles a person to maintain "an action." *Id.* "The right to maintain an action depends upon the existence of a cause of action, which involves the combination of a right on the part of the plaintiff and a violation of such right by the defendant." *Bell v. Moores*, 832 S.W.2d 749, 752 (Tex.App.-Houston [14th Dist.] 1992, writ denied).[11]

■■■■ A "cause of action" is thus similar to a "claim," in that they both refer to a legal right that a party asserts in the suit that constitutes the action. *See Torch Energy Advisors Inc. v. Plains Exploration & Prod. Co.*, 409 S.W.3d 46, 56 (Tex.App.-Houston [1st Dist.] 2013, no pet.) (noting that the ordinary meaning of "claim" is "the assertion of an existing right; any right to payment or to an equitable remedy," and "the aggregate of operative facts giving rise to a right enforceable by a court"). Thus, a "cause of action may exist before a suit is instituted." *Magill*, 409 S.W.3d at 679. But for there to be a "suit" or "action," it is "essential that it rest in a court, with the power to hear it. Without such a forum, it is not 'a suit,' since it lacks that which is as necessary to make it a suit as the petition itself." *Unit-*

11. *See also Magill v. Watson*, 409 S.W.3d 673, 679 (Tex.App.-Houston [1st Dist.] 2013, no pet.) (a "cause of action" consists of "those facts entitling one to institute and maintain an action at law or in equity"); *City of Texarkana v. Cities of New Boston*, 141 S.W.3d 778, 788 (Tex.App.-Texarkana 2004, no pet.) (stating that a "pleading" is the vehicle for "alleging a

cause of action" and thus the "means by which one party institutes a lawsuit."); *Elmo v. James*, 282 S.W. 835, 839 (Tex.Civ.App.-Fort Worth 1926, writ dism'd w.o.j.) ("The facts necessary to be alleged and proved in order to obtain the relief sought, and on account of which the action is instituted, logically constitute the cause of action.").

*ed Prod. Corp. v. Hughes,* 137 Tex. 21, 152 S.W.2d 327, 330 (1941) (quoting *Pecos & N.T. Ry. Co. v. Rayzor,* 106 Tex. 544, 172 S.W. 1103, 1104 (1915)). Recognizing these distinctions, this Court has used the terms "case," "cause," "suit," "lawsuit," "action," and "proceeding" interchangeably, while using the terms "claim," "cause of action," and "chose in action" to refer to the facts giving rise to a right that is enforceable in that proceeding. *See, e.g., State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696, 698–708 (Tex.1996).

Consistent with the common, ordinary usage of these terms, the Dallas Court of Appeals has expressly concluded that "the term *action* in section 10.01 [of the Civil Practice and Remedies Code] means 'suit,'" not "cause of action." *Bradley v. Etessam,* 703 S.W.2d 237, 241 (Tex.App.-Dallas 1985, writ ref'd n.r.e.) (emphasis in original). Similarly, the Amarillo Court of Appeals has concluded that a counterclaim is not an "action" as the Family Code uses that term. *Combs,* 958 S.W.2d at 850.[12]

Thus, according to the terms' common, ordinary meanings, section 150.002 requires "the plaintiff" to file a certificate of merit in "any [lawsuit] or arbitration proceeding" against a licensed professional, and "the plaintiff" is a party who initiates

the "action" or suit, not any party who asserts claims or causes of action within the suit. Third-party plaintiffs and cross-claimants do not initiate a lawsuit or legal proceeding. Because they share some similarities with plaintiffs, the law treats them similarly in limited respects. *See, e.g., Getty Oil Co. v. Ins. Co. of N. Am.,* 845 S.W.2d 794, 800 (Tex.1992) (noting that a defendant who asserts a cross-claim "becomes a plaintiff *for res judicata purposes*" with respect to compulsory claims relating to the cross-claim) (emphasis added); Tex.R. Civ. P. 85 (providing that a defendant's original answer "may present a cross-action, which *to that extent* will place defendant in the attitude of a plaintiff") (emphasis added). But that does not mean that the law treats them similarly in *all* respects. We thus conclude that, under the common, ordinary meaning of the terms, Comet and Austin Design Group are not "the plaintiffs" in this "action," because they are not the parties who initiated the suit.

### 2. The Context of the Words

Having identified the common meaning of the terms "plaintiff" and "action," we must also consider the context in which those words appear within section 150.002 and the statute as a whole.[13] The dissent

---

**12.** Generally, our rules of civil procedure also recognize the distinction between an "action," "suit," or "cause" and a "cause of action" or "claim." *Compare, e.g.,* Tex.R. Civ. P. 86 (referring to transfer of venue "from the county where *the action* is pending") (emphasis added) *and* Tex.R. Civ. P. 89 (providing that the "cause" shall be transferred and "such suit" filed in the new county, but if "the cause" is "severable as to parties defendant" it must be "ordered transferred as to one or more defendants but not as to all") *with* Tex.R. Civ. P. 91a.7 (providing for dismissal of a baseless "cause of action" and award of attorney's fees incurred "with respect to the challenged cause of action," except in "an

action" by or against a governmental entity or public official).

**13.** We agree with the concurring opinion's observation that, because our "tools for analyzing isolated words have limitations, context becomes essential to clarity." *Post* at 573 (Willett, J., concurring). But as the concurring and dissenting justices have previously acknowledged, *both* the words *and* the context matter. *City of Rockwall v. Hughes,* 246 S.W.3d 621, 632 (Tex.2008) ("When Searching for Statutory Meaning, Words Matter–And So Does Context.") (Willett, J., joined by Hecht, J., dissenting). If we have engaged in an "exhaustive" (if not "masterful," "splendid," and "impressive") analysis, *post* at 576–

considers it obvious that "a third-party plaintiff is a plaintiff." *Post* at 576. We agree that the terms "plaintiff" and "action" may sometimes be used more broadly than their common meanings would support.[14] To conclude that they are used that way here, however, either a statutory definition or the context of the language must clearly demonstrate that they are. So we must consider the entire statute in this case, to determine whether something other than the words' common meaning "is apparent from the context" here. *Molinet*, 356 S.W.3d at 411. Doing so, we conclude that the context does not support a different meaning but instead confirms the common meanings we have identified.

We begin our review of the context by recognizing that the statute requires the plaintiff to file a certificate of merit in "any action *or arbitration proceeding*." TEX. CIV. PRAC. & REM.CODE § 150.002(a) (emphasis added). By using the terms "action" and "arbitration proceeding" together with the conjunction "or," the statute treats the two terms as having a similar meaning. The meaning of individual words "may be ascertained by reference to words associated with them in the statute; and ... where two or more words of analogous meaning are employed together in a statute, they are understood to be used in their cognate sense, to express the same relations and give color and expression to each other." *Harris Cnty. v. Eaton*, 573 S.W.2d 177, 181 (Tex. 1978). Giving the term "action" its common meaning recognizes its similarity and relationship to the term "arbitration proceeding," so that in both terms the statute refers to a legal proceeding in which a plaintiff asserts a claim or cause of action. Indeed, if the term "action" referred to a claim or cause of action rather than a lawsuit or legal proceeding, there would be no reason for the statute to refer to an "arbitration proceeding" at all, because parties resolve claims and causes of action in both types of legal proceedings. *See, e.g.*, TEX. CIV. PRAC. & REM.CODE § 171.002 (addressing "claims" subject to arbitration); *In re Labatt Food Serv. L.P.*, 279 S.W.3d 640, 645–46 (Tex.2009) (holding that a wrongful death "cause of action" must be resolved through arbitration, which "merely changes the forum in which the claims are to be resolved").

Next, we consider that the statute requires the plaintiff to file a certificate of merit *"in"* an action or arbitration proceeding. TEX. CIV. PRAC. & REM.CODE § 150.002(a) (emphasis added). As a mat-

---

77 (Hecht, C.J., dissenting), of the common, ordinary meanings of "plaintiff" and "action," we have done so only and precisely because "words matter." Far from being "detached from reality," *post* at 575 (Hecht, C.J., dissenting), when it comes to fulfilling our role of interpreting statutes, the language of the law *is* our reality, at least unless we decide to start writing the law ourselves. Because the statute does not define the determinative words, we determine and apply their plain, ordinary, common meaning *"unless* a different meaning is apparent from the context." *Molinet*, 356 S.W.3d at 411 (emphasis added). Having determined the words' common, ordinary meanings, we now consider whether the context compels a different meaning.

**14.** We have identified one instance within the Civil Practice and Remedies Code, for example, where it appears that the term "plaintiff" is used interchangeably with the broader term "claimant." *See* TEX. CIV. PRAC. & REM.CODE § 74.351(c) ("If the claimant does not receive notice of the court's ruling granting the extension until after the 120–day deadline has passed, then the 30–day extension shall run from the date. the plaintiff first received the notice."). Similarly, we have identified one instance within our Rules of Civil Procedure where it appears that the term "action" is used as a short-hand reference to refer to a cross-claim. *See* TEX.R. CIV. P. 85 (providing that a defendant's original answer may "present a cross-action").

ter of ordinary language, it would be at least unusual, if not grammatically incorrect, to say that a plaintiff is "required to file" something "in" a "claim" or "in" a "cause of action." Rather, a party asserts a claim or cause of action "in" a pleading that is filed "in" a lawsuit or "action." The context of section 150.002(a), which requires the plaintiff to file the certificate of merit "with the complaint" and "in any action," thus indicates the common meaning of the term "action" as a lawsuit or legal proceeding.

Similarly, we note that the statute requires the certificate of merit to "set forth specifically" the defendant's conduct giving rise to liability "for *each theory of recovery* " and "the factual basis for *each such claim.*" TEX. CIV. PRAC. & REM.CODE § 150.002(b) (emphases added). Rather than requiring the factual support for "the action," as if that term meant a "claim" or "cause of action," this language demonstrates the statute's recognition of the difference between a "claim" and an "action." Subsection (a) requires the plaintiff to file a certificate of merit "in an action," and subsection (b) requires the certificate to state the factual basis for each legal theory or "claim" asserted in that action.

Turning to the meaning of the term "plaintiff," we observe that, throughout the Civil Practice and Remedies Code, the definitions and usage of the term "plaintiff," as opposed to the term "claimant," are consistent with its common meaning. When addressing frivolous pleadings and claims in chapter 9, for example, the statute uses the term "claimant," rather than the term "plaintiff," and expressly defines the term "claimant" to include "a plaintiff, counterclaimant, cross-claimant, third-party plaintiff, or intervenor, seeking recovery of damages." TEX. CIV. PRAC. & REM. CODE § 9.001(1). The statute consistently utilizes the same approach when address-

ing proportionate responsibility in chapter 33, *see id.* § 33.011(1), damages in chapter 41, *see id.* § 41.001(1), liability for stalking in chapter 85, *see id.* § 85.001(1), and liability for a year 2000 computer failure in chapter 147, *see id.* § 147.001(2). And when addressing medical liability claims (to impose an expert affidavit requirement similar to chapter 150's certificate-of-merit requirement), the statute uses a similar but slightly different approach, using the term "claimant" and defining that term to mean any person "seeking or who has sought recovery of damages in a health care liability claim." *Id.* § 74.001(a)(2). These provisions demonstrate that when the Legislature wants to use a single term that encompasses third-party plaintiffs, cross-claimants, and counter-claimants along with plaintiffs, it uses the term "claimant," and defines that term accordingly.

By contrast, the Code repeatedly uses the word "plaintiff" to refer to a party who initiates the suit, rather than to every party who asserts a claim for relief within a suit. When addressing the general rule for venue in chapter 15, for example, the statute provides that "all *lawsuits shall be brought,*" when other rules do not apply, "in the county in which *the plaintiff* resided at the time of the accrual of the cause of action." *Id.* § 15.002(a)(4) (emphases added). Similarly, although (as noted above) the medical liability act generally refers to "claimants," when addressing discovery procedures it refers instead to "*the plaintiff,*" who must serve standard discovery answers and responses "within 45 days after the date of *filing of the original petition.*" *Id.* § 74.352(a) (emphases added). And when addressing forum non conveniens motions in chapter 71, the statute uses the word "plaintiff" and defines it broadly to mean "a party seeking recovery of damages for personal injury or wrongful death," but the statute then expressly pro-

vides that "[t]he term does not include a counterclaimant, cross-claimant, or third-party plaintiff." *See id.* § 71.051(h)(2). These provisions demonstrate that when the Legislature wants to use a term that includes only a party who initiates a lawsuit, thus excluding third-party plaintiffs, cross-claimants, and counter-claimants, it uses the term "plaintiff," rather than the term "claimant." [15]

Finally, we note that this Court's practice in the Texas Rules of Civil Procedure is also consistent with the common meanings and the statutory usage of the terms "plaintiff" and "third-party plaintiff" to refer to distinct types of parties in a suit. Rule 38, for example, which governs third-party practice, provides that "a defending party, as a third-party plaintiff," may bring claims against a non-party "who is or may be liable *to him* or *to the plaintiff.*" Tex.R. Civ. P. 38(a) (emphases added).[16] The person against whom the third-party plaintiff asserts such claims, "hereinafter called the third-party defendant," may then assert any defenses "the *third-party plaintiff* has to *the plaintiff's* claim." *Id.* (emphases added). The third-party defendant must assert any compulsory counter-claims against the third-party plaintiff and any compulsory cross-claims against "other third-party defendants," and "[t]he plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of *the plaintiff's* claim against the *third-party plaintiff.*" *Id.*(emphases added). And our rules are also consistent with the statute's broader usage of the term "claimants." *See* Tex.R. Civ. P. 169(a)(1) (creating expedited procedure for certain suits in which "all claimants, other than counter-claimants" seek monetary relief aggregating $100,000 or less).

Having identified the common meanings of the terms "plaintiff" and "action" as referring to a party who initiates a lawsuit, in contrast to a "claimant" who asserts a claim for relief within a lawsuit, and having determined that the context of those terms supports those common meanings, we conclude that section 150.002's certificate-of-merit requirement applies to a party who initiates the lawsuit, and not to defendants or third-party defendants who assert claims for relief within a suit.

## C. Absurdity and the Purpose of the Statute

Jaster argues that construing section 150.002 to allow a party to bring third-party claims or cross-claims without filing a certificate of merit when a certificate of merit would be required if the same party filed the same claim as a separate suit achieves "an absurd result" and "thwarts" the purpose of the statute. *See* 382

---

**15.** We note that, as the Civil Practice and Remedies Code recognizes, there may be more than one plaintiff in a single lawsuit, "whether the plaintiffs are included by joinder, by intervention, because the lawsuit was begun by more than one plaintiff, or otherwise." Tex. Civ. Prac. & Rem.Code § 15.003(a). The recognition that those added to the suit by joinder or intervention may become "plaintiffs" is also consistent with the common meaning of the term, as such joinder or intervention simply places them among those who initiated the suit. *See, e.g.,* Tex.R. Civ. P. 40 (explaining circumstances in which "[a]ll

persons may join in *one action as plaintiffs* ") (emphasis added). Because this case does not present the issue of whether section 150.002 requires each individual plaintiff in a multi-plaintiff suit and those added as plaintiffs by joinder or intervention to file separate certificates of merit, we may not address that issue here without rendering an advisory opinion.

**16.** Thus, as the dissent agrees, a third-party plaintiff, under Rule 38, is not a "plaintiff" but "a *defendant* suing a non-party." *Post* at 576 (emphasis added).

S.W.3d at 565 (Henson, J., dissenting). Jaster is correct that courts should not enforce the plain meaning of a statute's text if doing so "leads to absurd or nonsensical results." *Molinet*, 356 S.W.3d at 411. We do not agree, however, that the application of the common meanings of the words used in section 150.002 leads to "absurd results," and we will not ignore the words' common meanings to achieve a purpose or object that is ambiguous at best.

 The "bar for reworking the words our Legislature passed into law is high, and should be. The absurdity safety valve is reserved for truly exceptional cases, and mere oddity does not equal absurdity." *Combs v. Health Care Serv. Corp.*, 401 S.W.3d 623, 630 (Tex.2013).[17] While the dissent and others may think it "odd" for the statute to require claimants to file a certificate of merit when they initiate a lawsuit but not when they assert claims as part of an existing lawsuit, there are legitimate reasons why the Legislature may have chosen this approach. For one, as the majority in the court of appeals noted, third-party plaintiffs and cross-claimants do not control the time and place of suit, and may not have adequate time to obtain the necessary expert analysis by the time their third-party claim or cross-claim is due. 382 S.W.3d at 560.[18]

In addition, as Comet and Austin Design Group argue and the court of appeals' majority also noted, many defendants (like Comet in this case) deny the existence of any design defect, but alternatively assert third-party claims against a design professional, seeking contribution and indemnity in the event that the plaintiff prevails. It would be far more "odd" to require such defendants to file an expert's certificate supporting the merits of the plaintiff's claim, thus requiring the defendants to

**17.** One example of an absurd result may be found in section 150.002(a)'s use of the word "complaint." As the dissent notes, while parties in federal courts file "complaints," *see, e.g.*, FED.R.CIV.P. 3 ("A civil action is commenced by filing a complaint with the court."), parties in Texas courts file "petitions," *see, e.g.*, TEX.R. CIV. P. 22 ("A civil suit in the district or county court shall be commenced by a petition filed in the office of the clerk."), so a " 'complaint' . . . is not part of Texas civil procedure." *Post* at 578. The dissent wonders why we do not "hold that Chapter 150 is dead letter because it applies only to the filing of a 'complaint', which is certainly not a 'petition.' " *Post* at 578. The absurdity doctrine answers that question. To construe section 150.002 of the *Texas* Civil Practice & Remedies Code so that it does not apply to any suit filed in *Texas* courts would present the kind of "exceptional" result that would qualify as "absurd." At a minimum, it would completely nullify the statute as to all such suits, and we cannot "lightly presume that the Legislature may have done [such] a useless act." *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485 (Tex. 1998). We therefore construe the term "complaint" to mean "petition," contrary to its common meaning, but we do so because the context of the term within the statute as a whole compels that result, not because we think doing so promotes a better public policy or would be more effective in promoting what we assume to be the statute's purpose.

**18.** The dissent suggests that section 150.002(c) alleviates any such time-crunch issues because the "time may be extended by motion or agreement." *Post* at 580. The "such time" to which this provision refers, however, appears to be the thirty-day extension that subsection (c) grants for cases "in which the period of limitation will expire within 10 days of the date of filing and, because of such time constraints, the plaintiff has alleged that [a certificate of merit] could not be prepared." TEX CIV. PRAC. & REM.CODE § 150.002(c). Although the parties do not present, and we do not decide, that issue here, it at least appears that subsection (c)'s justice-based extension is available only when the plaintiff files the action within 10 days before limitations expires. If that is so, then subsection (c) would not be nearly as adequate as the dissent suggests.

abandon their denial of the merits. Instead of trying to craft a necessarily complicated certificate-of-merit requirement that would appropriately address defendants who dispute any defect and those who do not, those who seek contribution and indemnity and those who seek affirmative rather than derivative relief, and those who file only cross-claims against existing defendants and those who file third-party claims against new defendants, the Legislature may have decided that the better course was to impose a simpler requirement that applies only to a plaintiff who initiates a lawsuit.

Ultimately, the most that can be said about the alleged "absurdity" of the statute as we read it is that it provides licensed and registered professionals with early protection against most, but not all, meritless claims. Even so, all claimants who assert such claims must support them with adequate and sufficient evidence, and summary judgment will be appropriate against those who cannot. Though some might argue that this approach was not the best policy choice, "we read unambiguous statutes as they are written, not as they make the most policy sense." *Health Care Servs.*, 401 S.W.3d at 629. Even if the result seems to us to be unreasonable, "reasonableness is not the standard for eschewing plain statutory language." *In re Blair*, 408 S.W.3d 843, 859 (Tex.2013) (Boyd, J., concurring). That high standard is absurdity, and we cannot say that this statute achieves an absurd result.

Nor can we conclude that the statute's plain meaning is inconsistent with the statute's purpose. Ultimately, the dissent concludes that interpreting the statute in accordance with the common, ordinary meaning of its words "partially impairs the statute's purpose." But with regard to the issue before us, all we know of the statute's purpose is that its purpose is to require "the plaintiff" in "any action" to file a certificate of merit "with the complaint." Other than that, the statute does not express its purpose.

Nevertheless, the dissent asserts that the statute's "manifest object" is "to require a prima facie showing of liability at the time certain professionals are sued for malpractice," *post* at 579, and this Court has observed, albeit in a different context, that its purpose is "to deter meritless claims and bring them quickly to an end." *CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.*, 390 S.W.3d 299, 301 (Tex.2013). But deciding exactly *which* licensed and registered professionals the Legislature intended to protect (those sued as defendants, those brought into a case as third-party defendants, or both?) and *which* meritless claims the Legislature intended to bring quickly to an end (those filed by a party who initiates a lawsuit, those filed by defendants after they are brought into a lawsuit, or both?) presents a different question. "[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice." *Rodriguez v. United States*, 480 U.S. 522, 525–26, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987). We must look to the statute's text to determine the policy choices that the Legislature made when deciding how to achieve the "manifest object" of section 150.002. "[I]t frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Id.* at 526, 107 S.Ct. 1391. We "are bound, not only by the ultimate purposes [the Legislature] has selected, but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes." *MCI Telecomm. Corp. v. Am. Tel. & Tel. Co.*, 512

U.S. 218, 231 n. 4, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994). The language of section 150.002 indicates that its purpose is to deter and end meritless claims that "the plaintiff" asserts "with the complaint" that initiates an "action." The Legislature has to balance many interests, and for the reasons we have explained, it may have decided that requirement strikes the proper balance. We must rely on the words of the statute, rather than rewrite those words to achieve an unstated purpose.

 Finally, we address the dissent's complaint that our analysis of the statute demands too much "precision" from the Legislature, at least if the goal of our analysis is to "giv[e] effect to the Legislature's intent in the enactment." *Post* at 579. We disagree and instead conclude that "[w]e must assume that the Legislature has done its very best to express its intent in the words of the statute itself." *C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 328 (Tex.1994) (Hecht, J., concurring and dissenting). We can acknowledge the possibility that, although the Legislature used the words "plaintiff" and "action" in chapter 150, it really meant "claimant" and "cause of action." Indeed, "[i]t is at least theoretically possible that legislators—like judges or anyone else—may make a mistake." *Brown v. De La Cruz,* 156 S.W.3d 560, 566 (Tex.2004). But even if that's the case here, "courts are not empowered to 'fix' the mistake by disregarding direct and clear statutory language that does not create an absurdity." *Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 638 (Tex.2010) (citing *Brown,* 156 S.W.3d at 566). "Courts are not responsible for omissions in legislation, but we are responsible for a true and fair interpretation of the law as it is written."

*Id.* at 637. In other words, as today's dissenting justice has explained, "[a] court must be careful not to substitute its own view of what should have been intended for what *was* intended." *Lane Bank Equip. Co. v. Smith S. Equip., Inc.,* 10 S.W.3d 308, 321 (Tex.2000) (Hecht, J., concurring).

We conclude that construing the terms "the plaintiff" and "any action" in section 150.002 according to their common meanings does not lead to absurd results or undermine the statute's stated purpose.

### III.

### Conclusion

We hold that the certificate-of-merit requirement in section 150.002 of the Civil Practice and Remedies Code applies to "the plaintiff" who initiates an action for damages arising out of the provision of professional services by a licensed or registered professional, and does not apply to a defendant or third-party defendant who asserts such claims. We therefore affirm the court of appeals' judgment upholding the trial court's denial of Jaster's motion to dismiss.

Justice WILLETT filed a concurring opinion, in which Justice LEHRMANN joined in part, and in which Justice DEVINE joined.

Chief Justice HECHT filed a dissenting opinion, in which Justice GREEN and Justice GUZMAN joined, and in which Justice BROWN joined in all but Part II.

Justice WILLETT, joined in part by Justice LEHRMANN, and joined by Justice DEVINE, concurring.

I join the plurality opinion[1] but write separately to underscore the centrality of

---

1. Justice Lehrmann does not join the plurality opinion, but joins the remainder of this concurrence.

semantic context in statutory interpretation and the perils of resting on a statute's supposed purpose.

## I. Context Indicates that Third–Party Plaintiffs Need Not Comply with Section 150.002.

I agree with the dissent that some words, taken in isolation, do not yield a platonic form free of ambiguity. However, context sheds light on meaning, and I believe the language of this statute, viewed in context, excludes third-party plaintiffs from the expert-affidavit requirement. Thus, the plurality opinion's analysis of the context does not just support its analysis of isolated words—it forms an essential foundation for understanding those words.

Judges must navigate a narrow course "between a sterile literalism which loses sight of the forest for the trees, and a proper scruple against imputing meanings for which the words give no warrant." [2] For that reason, "[l]anguage cannot be interpreted apart from context." [3] Meaning is bound to and bound by context. Words derive substance from the ecosystem of language in which we find them, and we must "consider the entire text, in view of its structure and of the physical and logical relation of its many parts." [4] The meaning of language, plain or not, must be drawn from the surrounding context, particularly everyday words and phrases that are inordinately context-sensitive. Such a contextual reading here demonstrates that "the plaintiff" who files "the complaint" in an "action . . . for damages" refers to the original plaintiff in the suit, and not a third-party plaintiff.

I agree with the plurality opinion's analysis of the word "action" in light of the statute's context and briefly add several other contextual considerations that support the plurality opinion's conclusion that the statute does not require third-party plaintiffs to file expert affidavits.

### A. "Plaintiff" Refers Only to the Original Plaintiff.

If action refers to a civil suit as a whole and not to individual claims, the meaning of "plaintiff" is necessarily circumscribed. The statute says "*the* plaintiff." Use of "the" indicates that the language is trying to pinpoint one particular party in the action or arbitration proceeding. Since "action" must be referring to the suit as a whole, this singular emphasis on a *particular* plaintiff seems to rest most naturally with the plaintiff who initiated the suit. Likewise, the required affidavit is to be filed with "*the* complaint." Again, this signals a focus on a particular party at a particular moment in the lawsuit. "*The* complaint" most naturally refers to the initial pleading that puts the "action" or suit into motion. Of course, other plaintiffs may come along through intervention or joinder. But when "the" shows up before both "plaintiff" and "complaint," it indicates the targeting of someone and something specific—the plaintiff and petition that put the suit in motion. This makes sense in light of the role of motions to dismiss—they are designed as sentinels that guard the gate and thus most naturally target the party who first comes knocking. Moreover, the manifest object of the provision is fulfilled after the initial plaintiff meets the requirement. There is no

---

**2.** *N.Y. Trust Co. v. Comm'r of Internal Revenue*, 68 F.2d 19, 20 (2d Cir.1933) (L. Hand, J.).

**3.** *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex.2011).

**4.** Antonin Scalia & Bryan A. Garner, Reading Law 167 (2012).

obvious need to require each additional plaintiff who sues the defendant to file a separate affidavit in order for this threshold protection to be provided because the initial affidavit has already provided the desired filtering effect.

## B. A Claim Seeking Contribution and Indemnity Is Not an Action "For Damages."

Additionally, section 150.002 does not apply to third-party plaintiffs seeking indemnity and contribution because the affidavit requirement is limited to actions "for damages." I would read this as damages sought by "the plaintiff" who seeks a direct right to recover against the design professional. Here, Comet does not seek damages—it seeks only contribution and indemnity. When a defendant files a third-party action against a third-party defendant seeking contribution and indemnity, the defendant does not increase the possible scope of damages that the plaintiff will ultimately recover. The only changing dynamic is the proportionate share of the damages to be paid. Thus, a claim for contribution and indemnity is not an action "for damages" because it does not provide an independent basis for any new damages. It only adds another variable in determining how the damages already sought by the original plaintiff will be allocated among co-liable parties. Thus, actions for contribution and indemnity are not actions "for damages."

When the language of section 150.002 is viewed as a whole, the meaning of "plaintiff" becomes clear. "Action" refers to civil proceedings, or the lawsuit as a whole. "The plaintiff" therefore is the original plaintiff. Moreover, a third-party plaintiff seeking only contribution and indemnity does not have a claim "for damages." Thus, a third-party plaintiff need not comply with the expert-affidavit requirement.

## II. Analysis of "Action" and "Plaintiff" in Isolation Does Not Free Them of Ambiguity.

In analyzing "action" and "plaintiff," the plurality opinion relies on dictionaries, other statutory provisions, and caselaw. These are helpful tools but often insufficient. "[T]he choice among meanings must have a footing more solid than a dictionary—which is a museum of words, an historical catalog rather than a means to decode the work of legislatures."[5] Reliance on caselaw definitions faces a similar problem. In both circumstances, the words are not considered in the context of their use in the statute before us. With caselaw, the problem is exacerbated because entirely different circumstances may have animated our former interpretation of a particular word. Evidence of meaning from other statutes is also useful, but this can be tricky, as words in statutes may take on unique or varying shades of meaning depending on the context and the purpose for which they are used. Because these tools for analyzing isolated words have limitations, context becomes essential to clarity.

## III. Jaster's Purposive Approach Does Not Dethrone the Primacy of Text.

Jaster and the court of appeals' dissent rely more heavily than CHIEF JUSTICE HECHT on the statute's alleged purpose. Both advocate use of the absurdity doctrine to effectuate the statute's purpose. That purpose, according to Jaster, is to shelter design professionals from the

---

5. Frank H. Easterbrook, *Text, History, and Structure in Statutory Construction*, 17 HARV. J.L. & PUB. POL'Y 61, 67 (1994).

waste of defending non-meritorious claims. He complains that Comet's reading of the statute would frustrate this purpose because the design professional directly sued by the original plaintiff is protected, while the design professional who is dragged into the lawsuit by a defendant eager to pass along or share liability is not. Parties similarly situated are treated differently, which may seem illogical and unfair. But this result does not rise to the kind of absurdity that would justify deviation from a fair reading of the text in favor of a putative purpose.

Liberal use of the absurdity doctrine too often devolves into purposive interpretation of statutes. And reliance on legislative purpose always tempts but rarely tempers. That temptation reaches its zenith when the upshot of a straightforward reading seems illogical or unjust. But a fair reading may well require an unfair result. When interpreting the Legislature's words, we cannot revise them under the guise of interpreting them. "Making law *work* is a proper goal for judges only at the retail level; substance is in the main for the political branches." [6]

Plus, careful textual commitment can encourage careful drafting. When legislatures come to see courts as editors rather than adjudicators, busy legislators may leave the judiciary to tighten the screws on loose language down the road. Vague legislation is sometimes inadvertent and sometimes intentional, but it is always a recipe for increased litigation and judicial guesswork. By sticking to our limited role, judges do more to improve the quality of the law than they ever could by decamping from text to hunt the snark of unvoiced legislative purpose.

In order to carefully police our limited role, the bar for application of the absurdity doctrine must remain high. Peculiarity or unfairness is not sufficient to trigger the absurdity doctrine. As we held recently—and unanimously—statutory language "can often work peculiar outcomes, including over- or under-inclusiveness.... [but] mere oddity does not equal absurdity.... The absurdity backdrop requires more than a curious loophole." [7] In general, "if the legal deck is stacked via technical statutory requirements, the Legislature should reshuffle the equities, not us." [8] Here, the failure of the statute to protect design professionals from third-party plaintiff claims while furnishing protection from original plaintiffs may be "quirky," but that is "quite different from proving it was quite impossible that any rational Legislature could have intended it." [9]

Indeed, a rational Legislature could have wanted to exclude third-party plaintiffs because requiring their compliance with section 150.002 creates a "quirky" result of its own. Section 150.002 requires submission of an expert affidavit along with the complaint that sets forth "specifically at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim." It is not clear whether this affidavit must lay out some factual basis for each essential element of a negligence claim, but it must at least lay out the factual basis for the "negligent act, error, or omission." A persuasive affidavit regarding a negligent act will often require evidence of the alleged defect resulting from the design professional's supposed

**6.** *Id.* at 64 (emphasis in original).

**7.** *Combs v. Health Care Servs. Corp.,* 401 S.W.3d 623, 630 (Tex.2013).

**8.** *Roccaforte v. Jefferson Cnty.,* 341 S.W.3d 919, 928 (Tex.2011).

**9.** *Combs,* 401 S.W.3d at 631.

negligence. However, this kind of evidence will often also constitute evidence helpful to establish the original plaintiff's claim against the defendant home-builder before the plaintiff has presented his case-in-chief, moved for summary judgment, or even engaged in full discovery. In other words, application of section 150.002 to a third-party plaintiff will often place the defendant/third-party plaintiff in the unenviable position of either breaking ground for his own burial or foregoing his right to indemnity or contribution. While this may not amount to an absurd result, it certainly awakens our sense of unfairness in the same manner as the supposed absurdity of not holding third-party plaintiffs to the same heightened pleading requirement as original plaintiffs. It is not our place to choose between these anomalous results.

Careful textual analysis here points to a clear result, and the plurality opinion rightly declines to engage in the purposive analysis urged by Jaster. Here, context clearly indicates that the text does not require third-party plaintiffs to file an expert affidavit with the third-party petition.

Chief Justice HECHT, joined by Justice GREEN and Justice GUZMAN, and in all but Part II by Justice BROWN, dissenting.

In this case and another decided today, *In re Ford*,[1] the Court has written more on the subject of who is a "plaintiff" than I imagine all the other courts in the English-speaking world have ever written, all together. The distinction is a dubious one.

The cases are quite different, of course—the issue in this case is who *the* plaintiff is, while in *Ford* the issue is who *a* plaintiff is, and although both cases involve

statutes in the Texas Civil Practice and Remedies Code,[2] the statutes are in separate volumes. So it is hardly surprising that the cases reach different, and arguably contradictory, outcomes. Without trying to put too fine a point on it, the Court holds in this case that a third-party plaintiff cannot be *the* plaintiff in any action, and is of two minds about whether an intervenor can be *the* plaintiff, while in *Ford* the Court holds that *both* a third-party plaintiff *and* an intervenor can be *a* plaintiff, so long as they are not also defendants. Not to complicate matters, the author of the Court's opinion in *Ford* agrees that this case is correctly decided, but the author of the Court's opinion in this case dissents in *Ford*. And another dissenter in *Ford* joins the opinion in this case—but that begins to complicate matters.

I suspect that these cases will leave many readers scratching their heads. Though the Court is trying to adhere to the statutory text, whatever the result, it opens itself to the criticism that its analysis is picky and detached from reality. Intending to be careful, the Court risks being viewed as conducting a contest among the Pharisees in the Temple of Textualism over who is the most devout.

Faithfulness to the principle that the words of a statute are the law may necessitate embracing a result that is peculiar or worse, yet unavoidable. But *unnecessarily* embracing such a result undermines the principle by suggesting that more and less reasonable interpretations are to be treated equally. The Judiciary's sole objective in interpreting statutes is to give effect to the Legislature's intent expressed in its words. Out of respect for the Legislative Branch, we must read their words the way

1. 442 S.W.3d 265, 2014 WL 2994622 (Tex. 2014).

2. Unless otherwise indicated, all statutory references are to the Texas Civil Practice and Remedies Code.

they have written them—to make sense. I am not confident we have achieved that result in this case and therefore respectfully dissent.

I

By statute, "the plaintiff" in "any action or arbitration proceeding" for malpractice by certain professionals must ordinarily file "with the complaint" an affidavit supporting each theory of recovery.[3] All we have to decide is whether this requirement applies when a professional is sued by a third-party plaintiff—a defendant suing a non-party.[4] One might think this would be pretty easy: a third-party *plaintiff* is, in name itself, a plaintiff, and a suit is an action, so yes, the requirement applies. But the reader will by now have seen from the plurality and concurring opinions that the issue is far more complicated than that.

The answer, according to the plurality opinion, depends on the "plain", "common", and "ordinary" meaning of the statute's operative words, "the plaintiff" and "any action".[5] The plurality opinion then embarks on what is the most exhaustive treatment of that subject in the law of

3. TEX. CIV. PRAC. & REM.CODE § 150.002(a) ("In any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party licensed architect, licensed professional engineer, registered landscape architect, or registered professional land surveyor who: (1) is competent to testify; (2) holds the same professional license or registration as the defendant; and (3) is knowledgeable in the area of practice of the defendant and offers testimony based on the person's: (A) knowledge; (B) skill; (C) experience; (D) education; (E) training; and (F) practice."); § 150.002(b) ("The affidavit shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim."); § 150.002(c) ("The contemporaneous filing requirement of Subsection (a) shall not apply to any case in which the period of limitation will expire within 10 days of the date of filing and, because of such time constraints, the plaintiff has alleged that an affidavit of a third-party licensed architect, licensed professional engineer, registered landscape architect, or registered professional land surveyor could not be prepared. In such cases, the plaintiff shall have 30 days after the filing of the complaint to supplement the pleadings with the affidavit. The trial court may, on

motion, after hearing and for good cause, extend such time as it shall determine justice requires."); § 150.001(1–a) (" 'Licensed or registered professional' means a licensed architect, licensed professional engineer, registered professional land surveyor, registered landscape architect, or any firm in which such licensed or registered professional practices, including but not limited to a corporation, professional corporation, limited liability corporation, partnership, limited liability partnership, sole proprietorship, joint venture, or any other business entity.").

4. TEX.R. CIV. P. 38(a) ("At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a citation and petition to be served upon a person not a party to the action who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him. The third-party plaintiff need not obtain leave to make the service if he files the third-party petition not later than thirty (30) days after he serves his original answer. Otherwise, he must obtain leave on motion upon notice to all parties to the action.").

5. *Ante* at 562 ("We limit our analysis to the words of the statute and apply the plain meaning of those words 'unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results.' "); *id.* at 563 ("Chapter 150 does not define the terms 'plaintiff' or 'action,' so we must give them their common, ordinary meaning unless the statute clearly indicates a different result.").

Texas, if not all of American jurisprudence. It is masterful. I would not challenge a word, and there is certainly nothing left to add. All I can do of any use is to summarize the plurality opinion's analysis and then offer a few reflections.

*According to the plurality opinion:*

The word "action" is sometimes used "more broadly" to refer to a "cause of action", but an "action" is really an entire lawsuit, and a "cause of action" is only a "right to relief", or at least a "claim" to such a right.[6] A person with a "cause of action" can bring an "action", which is "generally synonymous with 'suit'", except that "the word 'suit' can be 'more general in its comprehension than the word "action"'".[7] Historically, an "action" was a legal proceeding and a "suit" was an equitable one.[8] The important thing is that both an "action" and a "suit" are "proceedings", though actually, all three words, while different, have been used interchangeably, along with "case", "lawsuit", and "cause".[9] An "action" is a "cause", but it is not a "cause of action". That is, except for one time in Rule 85 of the Texas Rules of Civil Procedure.[10]

*Furthermore:*

Dictionaries define "plaintiff" as the person who initiates an "action" or "suit".[11] Third-party plaintiffs and cross-claimants "share some similarities" with "plaintiffs",

and the law treats them similarly "in limited respects". For example, third-party plaintiffs and cross-claimants initiate proceedings against third-party defendants and cross-defendants, and they are plaintiffs for res judicata purposes.[12] But third-party plaintiffs and cross-claimants are not "plaintiffs" in an "action" because they initiated only part of the suit, not the whole suit.[13] There must be "a direct relationship between the words 'plaintiff' and 'action.'"[14] All "plaintiffs" are "claimants", but not all "claimants" are "plaintiffs", and "[t]hroughout the Civil Practices and Remedies Code," that is the way those words are defined and used. When the Legislature says "plaintiff", it means the person initiating suit, and when it says "claimant", it means "plaintiffs" and others who assert "causes of action".[15] Actually, that is not quite right. Chapter 74 uses the terms "plaintiff" and "claimant" interchangeably in the very same sentence.[16] Also, some "plaintiffs" do not initiate suit but intervene or are involuntarily joined, but by being included among the "plaintiffs" who do initiate suit, they become "plaintiffs", though maybe not under the statute in this case, a question we need not decide.[17]

*Conclusion:* Third-party plaintiffs are not plaintiffs.

---

6. *Ante* at 564.

7. *Ante* at 564.

8. *Ante* at 564.

9. *Ante* at 565.

10. *Ante* at 564 n. 11; *see* TEX.R. CIV. P. 85 ("The original answer ... may present a cross-action....").

11. *Ante* at 565.

12. *Ante* at 569.

13. *Ante* at 569.

14. *Ante* at 563.

15. *Ante* at 567.

16. *Ante* at 566 & n. 14; *see* TEX. CIV. PRAC. & REM.CODE § 74.351(c) ("If the claimant does not receive notice of the court's ruling granting the extension [to file an expert report] until after the 120–day deadline has passed, then the 30–day extension shall run from the date the plaintiff first received the notice.").

17. *Ante* at 568 n. 15.

To the plurality opinion's splendid analysis and conclusion, I respectfully offer five reservations.

*First:* The plurality opinion has proven beyond any doubt that sometimes third-party plaintiffs are plaintiffs and sometimes not, sometimes third-party actions are actions and sometimes not, and while sometimes the variations can be explained, sometimes they cannot be. Any remaining doubt is quickly dispelled by searching caselaw and statutes for the terms "third-party plaintiff", "third-party action", and "third-party cause of action", and noting the various, inconsistent ways in which those terms are used. When a word is used sometimes to mean one thing and sometimes another, neither is "plain", "common", or "ordinary" to the exclusion of the other. Ironically, the plurality opinion's labors to prescribe definite meanings for "plaintiff" and "action" only demonstrate that for it, the words "plain", "common", and "ordinary" have no real meaning at all.

*Second:* The underlying assumption of the plurality opinion's approach is that when it finally arrives at the real meaning of the inescapably imprecise words, "plaintiff" and "action", trudging through dictionaries, cases, and statutes, parsing and explaining, and finally discarding what it considers to be misuses of the words, the end result will be what the Legislature intended without going through the same process. When lawyers and judges have put words to various, inconsistent uses over time, legislators simply cannot be presumed, alone of all creatures, to be precise—or closer to the point, to have been more precise in one statute than they were in others. And in Chapter 150, they, in fact, were not precise at all.

For example, a "complaint", with which a certificate must be filed, is not part of Texas civil procedure. Obviously, a "petition" is intended. Would the Court hold that Chapter 150 is dead letter because it applies only to the filing of a "complaint", which is certainly not a "petition"? Heavens, no, the plurality opinion says. That would be absurd.[18]

For another example, a certificate must be filed by "the plaintiff" in an "arbitration proceeding", but in an arbitration proceeding, the person seeking relief is uniformly referred to as a "claimant", not as a "plaintiff".[19] Does this mean that certificates of merit need never be filed in arbitration proceedings? I suppose the Court would think that absurd, too.

Yet if there is any justification for interpreting "action" strictly, "plaintiff" somewhat strictly, and "complaint" loosely, all three words in the same sentence, it is not apparent. More importantly, the process of interpreting statutes cannot legitimately ascribe a precision to them that the pro-

---

18. *Ante* at 569 n. 17.

19. *See Rules and Procedures,* AMERICAN ARBITRATION ASSOCIATION, https://www.adr.org/aaa/faces/rules (last visited July 1, 2014) (no reference in rules to "plaintiff"); *Code of Arbitration Procedure,* FINANCIAL INDUSTRY REGULATORY AUTHORITY, http://www.finra.org/Arbitration AndMediation/Arbitration/Rules/Codeof ArbitrationProcedure/ (last visited July 1, 2014); Rules of the Judicial Arbitration and Mediation Services, available at *ADR Clauses, Rules, and Procedures,* JAMS, http://www. jamsadr.com/rules-clauses/ (last visited July 1, 2014); *Arbitration Rules,* WORLD INTELLECTUAL PROPERTY ORGANIZATION, http://www.wipo.int/amc/en/arbitration/rules/newrules.html (last visited July 1, 2014); *ICC Rules of Arbitration,* INTERNATIONAL CHAMBER OF COMMERCE, http://www.iccwbo.org/products-and-services/arbitration-and-adr/arbitration/icc-rules-of-arbitration (last visited July 1, 2014); *Rules and Procedures,* INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION, https://www.icdr.org/icdr/faces/i_search/i_rule? (the international division of AAA).

cess of writing them gave no indication, and probably was incapable, of producing. At least, it cannot do so with the professed purpose of giving effect to the Legislature's intent in the enactment. Judicial interpretation should not imagine a Legislature that does not exist.

*Third:* As the plurality opinion candidly acknowledges, "the terms 'plaintiff' and 'action' may sometimes be used more broadly than their common meanings would support."[20] When the Legislature has used the same words to mean different things from time to time, at least once in the same sentence, how is it possible to determine *from the words alone* what it meant *this time?* In Chapter 74 of the Civil Practice and Remedies Code, the Legislature uses "plaintiff" to mean "claimant", which includes third-party plaintiffs.[21] How can the Court ascertain, from nothing more than the words themselves, that the Legislature did not intend the same meaning in Chapter 150?

*Fourth:* The plurality opinion demonstrates that judicial interpretation of statutes cannot focus on text alone; it must examine the text in context. The plurality and concurring opinions profess agreement that context is important, but by context, both mean only surrounding words, not the reality they are intended to affect. The concurring opinion warns against "a sterile literalism which loses sight of the forest for the trees", but staring at little clumps of trees—losing sight of the forest for the groves—is no more fertile an approach.

The context the Court ignores is the world in which the words it has so careful-ly examined operate. It has long been the Court's rule that "a statute is to be construed with reference to its manifest object, and if the language is susceptible of two constructions, one of which will carry out and the other defeat such manifest object, it should receive the former construction."[22] But the rule is disregarded in a Rabbinic fixation with individual words. The plurality opinion's impressive analysis may be correct *in the abstract.* It may be that "plaintiff" and "action" should always have only the meanings the Court ascribes to them. But that has never been true—hence, the need for lengthy analysis—and to demand such exactitude in this case impairs the statute's purpose.

The manifest object of Chapter 150 is to require a prima facie showing of liability at the time certain professionals are sued for malpractice. Remarkably, and tellingly, the Court states that it simply cannot tell what the manifest object of Chapter 150 is because it cannot be sure exactly which professionals are to be protected or precisely from what claims. An obvious answer, especially when the Legislature has not said otherwise, is: *all.* The concurring opinion admits that imposing the requirement only on a plaintiff suing a defendant and not on a third-party plaintiff suing a third-party defendant "may be 'quirky' ",[23] but the concurring opinion and the plurality opinion conceive two reasons why this was exactly what the Legislature intended.

One is that a third-party plaintiff may be caught off-guard by a lawsuit and not have enough time to procure the required affidavit before the third-party petition must be filed.[24] But the third-party plaintiff will

**20.** *Ante* at 566.

**21.** *Supra* note 567.

**22.** *Citizens Bank of Bryan v. First State Bank, Hearne,* 580 S.W.2d 344, 348 (Tex.1979).

**23.** *Ante* at 574.

**24.** *Ante* at 575.

never have less than 51 days,[25] and that time may be extended by motion or agreement. It is possible that the Legislature could have considered this time pressure sufficient reason to except an entire group of claims from a requirement intended to protect all professionals, but it is just as likely that the Legislature thought the opposite and did not create the loophole the Court finds today.

Another motive the Court thinks the Legislature might have had for excluding third-party plaintiffs from the statutory requirement is that to include them is "necessarily complicated" because third-party plaintiffs and cross-claimants may be seeking "affirmative rather than derivative relief" or only "contribution and indemnity".[26] But the Court simply presumes that it is "appropriate[ ]" to tailor the affidavit requirement to each such situation. It is far simpler, and no less appropriate, to treat all claimants the same: a charge of malpractice cannot be made against these professionals without something more than mere allegations to back it up. And the cross-claimant seeking only contribution and indemnity can use a certificate previously filed by a plaintiff.

*Fifth:* Despite every effort, the Court itself cannot plough a straight furrow. Third-party plaintiffs are not covered by the statute, even if the third-party action is severed, so that the third-party plaintiff becomes *the plaintiff* in the severed action and its initiator, just as if the third-party action had been filed separately to begin with. And when parties joined as plaintiffs after the action has been initiated are the first to assert a malpractice claim

against a professional, the Court cannot say for sure whether they are plaintiffs or not. It feebly hints that they may be plaintiffs by association, falling prey to the smudging of meanings it is trying to rectify, then declines to answer its own question lest its explanation be advisory.[27]

## II

And the plough hits a rock in *Ford*. That case involves Section 71.051 regarding *forum non conveniens*. The statute requires dismissal of actions falling under that doctrine, as determined by applying several factors, but excepts cases in which "the plaintiff is a legal resident of this state."[28] The statute also defines "plaintiff" as "a party seeking recovery of damages for personal injury or wrongful death" but expressly excludes third-party plaintiffs.[29]

The problem in the case is this. A nonresident plaintiff sued his deceased brother's estate for injuries suffered in a vehicular accident in Mexico in which the brother, who owned and maintained the vehicle, was killed. The estate, in turn, sued Ford, and then so did the plaintiff. At that point, the case could have been dismissed under Section 71.051. But the decedent's wrongful death beneficiaries, some of whom are residents, intervened, also suing Ford, but not, of course, suing the defendant estate. If the intervenors are plaintiffs, the case cannot be dismissed. But are they third-party plaintiffs, statutorily excluded from "plaintiffs"? No, the Court holds, because in context, the third-party plaintiffs referred to in the

---

25. A defendant sued on Monday has 21 days in which to answer, Tex.R. Civ. P. 15, and 30 more days in which to file a third-party petition as a matter of right, Tex.R. Civ. P. 38.

26. *Ante* at 570.

27. *Ante* at 568 n. 15.

28. Tex. Civ. Prac. & Rem.Code § 71.051(e).

29. *Id.* § 71.051(h)(2) (counterclaimants and cross-claimants are also excluded).

statute must also be defendants, and the intervenors are more aligned with the plaintiff than with the defendant.

I join in the Court's opinion in *Ford*, though the Court's detailed analysis of the text and the alignment of the parties is similar to the Court's analysis in the present case, which as I have said, I find misguided. Unquestionably, however, had the intervenors filed their own suit, it could not have been dismissed and could have been consolidated with the original plaintiff's suit, or if that suit had been dismissed, the plaintiff could have intervened in the other suit. Thus, the action involving all the parties and claims can be brought in Texas without being dismissed under Section 71.051. So the question becomes: are the procedural differences in the way the case was brought and the way it could have been brought significant to the ostensible purpose of Section 71.051? The answer is plainly no. Without answering that question, the dissents would dismiss the intervenors' claims because, in this action, they are more aligned with the defendant's. In the dissents' view, the intervenors simply made an error that cost them their case in Texas.

In my view, while it is possible to read the statute as the dissents do, it is at least as reasonable to read it as the Court does, and it is impossible to think the Legislature intended, as between the two, the interpretation that leads to different results for essentially identical parties. And we should not think, as the dissents do, that the Legislature, in trying to preserve a Texas forum for Texas residents, craftily laid a trap so that by suing one way rather than another, they would lose their rights altogether.

In both this case and *Ford*, we must interpret statutory language that, in the circumstances presented, is imprecise. In both cases, the statutory purpose is evident, not something that we must supply. "The evident purpose of what a text seeks to achieve is an essential element of context that gives meaning to words." [30] When that purpose can be determined from the text, as it can easily be in these cases, "[a] textually permissible interpretation that furthers rather than obstructs [a statute's] purpose should be favored." [31]

### III

Finally, I add a brief word in response to the argument that a stricter judicial adherence to text will produce more careful statutory drafting. For one thing, I doubt whether that is true, or even possible. This Court pores over every word, every comma, in its opinions, trying to be as exact as possible, and still disagreements regularly arise—often even among us—about what was really said. The legislative process does not usually allow for the same care to be taken in the choice of language. There are many authors, the text is subject to amendments of all sorts, friendly and unfriendly, and in the end, the product is often one of compromise, which is essential to the legislative process.

More importantly, the Judiciary is not, in my view, entitled to insist that the Legislature write for our approval. Our objective in interpreting statutes is to find *the Legislature's* intent in the words *it* enacted, not what a group of grammarians and researchers might have intended by those words. This does not justify substituting our meaning for the Legislature's, or what we might consider desirable policies for those it has chosen. But proper statutory

---

30. Antonin Scalia & Bryan Garner, Reading Law 20 (2012).

31. *Id.* at 63.

interpretation does require us to give careful consideration to the reality in which and for which the Legislature acted. For legislators, each statute has a purpose, which is the context in which the words speak. When we can find that purpose without inventing it, and pursue it without adding or detracting from it, it should inform our interpretation.

\* \* \* \* \* \*

Since the Tower of Babel, expression is inexact. Joseph Heller has written powerfully of the importance of context:

> "Help!" he shrieked shrilly in a voice strangling in its own emotion, as the policemen carried him to the open doors in the rear of the ambulance and threw him inside. "Police! Help! Police!" The doors were shut and bolted, and the ambulance raced away. There was a humorless irony in the ludicrous panic of the man screaming for help to the police while policemen were all around him. Yossarian smiled wryly at the futile and ridiculous cry for aid, then saw with a start that the words were ambiguous, realized with alarm that they were not perhaps, intended as a call for police but as a heroic warning from the grave by a doomed friend to everyone who was not a policeman with a club and gun and a mob of other policemen with clubs and guns to back him up. "Help! Police!" the man had cried, and he could have been shouting of danger.[32]

The starting point of textual analysis must be the words chosen, but it cannot be the ending point, lest the exercise be criticized as verbomania. In my view, the Court in this case rejects a simple, reasonable—and yes, plain—interpretation of a statute in favor of a demanding but inconsistent word analysis that partially impairs the statute's purpose. The Court narrow-

ly avoids doing the same thing in *Ford*. We would not interpret our own work this way, and it is no more appropriate because the work is that of another Branch of Government. I respectfully dissent.

---

**32.** Joseph Heller, Catch–22 425 (Dell ed.1985) (1961).